Page 496
939 P.2d 496
21 Colorado Journal 641
CITY OF DURANGO and Colorado Intergovernmental Risk Sharing
Agency, Petitioners,
v.
Randy L. DUNAGAN and The Industrial Claim Appeals Office of
the State of Colorado, Respondents.
No. 96CA0973.
Colorado Court of Appeals,
Div. II.
May 1, 1997.

Page 497
        Senter, Goldfarb & Rice, L.L.C., Karen G. Treece, Denver, for Petitioners.
        Crane and Tejada, Bethiah B. Crane, Douglas R. Ware, Durango, for Respondent Randy L. Dungan.
        No Appearance for Respondent Industrial Claim Appeals Office.
        Opinion by Judge TAUBMAN.
        Petitioners, the City of Durango and the Colorado Intergovernmental Risk Sharing Agency, seek review of a final order of the Industrial Claim Appeals Office (Panel), which determined that Randy L. Dunagan (claimant) was entitled to medical benefits for a 1991 back injury. We affirm.

Page 498
I. Causal Relationship
        Petitioners first contend that there is no evidence in the record to support a causal relationship between the 1991 back injury suffered by claimant and his disc herniation that was diagnosed in 1995. We disagree.
        Claimant's treating physician opined that the 1991 injury weakened the annulus and put claimant at risk of herniation. She also stated that the 1991 injury, combined with claimant's ongoing physical activities on behalf of his employer, were responsible for the deterioration of claimant's back condition. In addition, claimant testified that although he had engaged in physical activities outside of work, he did not suffer any other accidents or incidents that resulted in specific pain or injury to his lower back. The ALJ found claimant's testimony to be credible.
        Accordingly, substantial evidence supports the ALJ's conclusion that the disc herniation was work-related. Therefore, neither the Panel nor this court may substitute its judgment for that of the ALJ concerning the weight of the evidence or the inferences to be drawn therefrom. See May D & F v. Industrial Claim Appeals Office, 752 P.2d 589 (Colo.App.1988).
II. Statute of Limitations
        Petitioners also assert that claimant failed timely to file a claim for compensation from the 1991 injury on April 20, 1995. We disagree.
        Section 8-43-103(2), C.R.S. (1996 Cum.Supp.) requires that a notice claiming compensation be filed within two years after the injury. However, the limitation period commences when the claimant, as a reasonable person, should recognize the nature, seriousness, and probable compensable character of the injury. City of Boulder v. Payne, 162 Colo. 345, 426 P.2d 194 (1967); Intermountain Rubber Industries, Inc. v. Valdez, 688 P.2d 1133 (Colo.App.1984).
A.
        We reject petitioners' argument that, as a matter of law, claimant must have recognized the nature, seriousness, and probable compensable character of his injury once he had missed three non-consecutive days or shifts of employment by "sometime in 1992," and thus the statute of limitations expired sometime in 1994.
        In support of their argument, petitioners cite § 8-42-103(1)(a), C.R.S. (1996 Cum.Supp.), which provides, in pertinent part, that a disability indemnity shall not be payable as wages pursuant to the Workers' Compensation Act "[i]f the period of disability does not last longer than three days from the day the employee leaves work as a result of the injury." They also rely on § 8-42-105(1), C.R.S. (1996 Cum. Supp.), which provides that: "In case of temporary total disability of more than three regular working days' duration, the employee shall receive sixty-six and two-thirds percent of said employee's average weekly wages so long as the disability is total...."
        However, even if we assume, without deciding, that the three days or three shifts referred to in these sections need not be consecutive, nevertheless, in our view, these sections indicate only the extent of the compensation that is available once a claimant is aware of the probable compensable character of the claim. Under City of Boulder v. Payne, supra, the limitation period does not commence until claimant should be able to recognize not only the compensable character of the injury, but also the nature and seriousness of that injury.
        Petitioners also rely upon §§ 8-43-101(1) and 8-43-203(1), C.R.S. (1996 Cum.Supp.) which refer to "three shifts or calendar days" and "three shifts or three calendar days," respectively. However, these statutes merely establish the threshold period of disability that triggers the obligation of the employer and/or its insurer to record and report certain injuries to the division or to file a notice concerning liability.
        These statutes do not mandate a conclusion that an employee meeting this three-day or three-shift threshold requirement has, as a matter of law, become aware of the nature or seriousness of his or her injury.

Page 499
B.
        We further reject petitioners' contention that Intermountain Rubber Industries v. Valdez, supra, supports the argument that claimant did not timely file his claim.
        While the claimant in Valdez was aware that he had injured his back, his treating physicians did not diagnose him as suffering from any disc or musculoskeletal disorder or give him any indication that he was predisposed to more serious back injury. Therefore, the ALJ properly concluded that claimant there did not discover the probable compensable nature of his claim or the nature and severity of his low back injury until he was diagnosed as having a herniated disc. Thus, claimant's petition to reopen was timely filed within the applicable period after that discovery.
        Here, as in Valdez, the claimant's mere awareness of pain associated with the 1991 back injury did not trigger the statute of limitations. At that time, claimant did not realize that the injury was serious enough to subject him to the possibility of disc herniation at a later time. Further, claimant continued to perform his employment and did not seek medical care until the pain changed in character and location to become intolerable and radicular in early 1995. He also could not recall whether his absences for illness after 1991 were due to his back condition or other causes.
        Thus, since claimant's notice of claim was filed within the limitation period after he discovered the nature, seriousness, and compensable character of his injury, such notice was timely.
III. Out-of-State Treatment
        Finally, petitioners make several arguments concerning whether the out-of-state medical treatment sought by claimant was reasonable and necessary.
        The determination whether treatment or services provided under § 8-42-101, C.R.S. (1996 Cum.Supp.) are reasonable and necessary is one of fact for resolution by the ALJ. See Suetrack USA v. Industrial Claim Appeals Office, 902 P.2d 854 (Colo.App.1995).
A.
        Petitioners first contend that medical treatment must be provided by someone in the claimant's locale unless there is a showing that neither a local nor an in-state competent provider is available. We disagree.
        In Suetrack USA v. Industrial Claim Appeals Office, supra, a division of this court affirmed an award of compensation for home health care provided by the claimant's wife under circumstances in which a hospital had advised the claimant that such services were not available in the rural area where claimant lived. However, the Suetrack court did not conclude that reasonable and necessary medical services must be provided by someone in the claimant's locale.
        Furthermore, § 8-42-101 contemplates that an employer provide all treatments reasonably necessary to relieve a claimant from the effects of an industrial injury. It does not set forth any limitation or requirement that all possible providers either in a claimant's locale or within Colorado must be sought before an out-of-state provider may be authorized for medical treatment.
        Here, the treating physician agreed that surgery was a reasonable treatment for claimant's condition and indicated that claimant would have already had it but for the litigation surrounding the claim. Further, inasmuch as claimant agreed to abide by the fee schedule for Colorado providers and not to request payment for his transportation expenses, there was no evidence that performance of surgery by the referral physician in Phoenix would be any more expensive than if it had been performed in Durango. Accordingly, the ALJ's determination that petitioners were responsible for claimant's out-of-state medical care is binding.
B.
        Petitioners also contend that Department of Labor & Employment Rule XVI(E), 7 Code Colo. Reg. 1101-3, prohibits the use of out-of-state providers when services are 

Page 500
available in Colorado. We do not address this issue.
        Petitioners did not raise this specific argument before the ALJ and it was only raised before the Panel in petitioners' reply brief, which was stricken from the record by the ALJ. We do not agree that it was necessarily included in the broader issue of whether the medical treatment was reasonable and necessary. Thus, this issue may not now be raised on appeal. See Lewis v. Scientific Supply Co., 897 P.2d 905 (Colo.App.1995); cf. Sneath v. Express Messenger Service, 931 P.2d 565 (Colo.App.1996) (issue preserved for review if claimant raises substance of issue before ALJ, even if correct label is not used).
C.
        Lastly, petitioners contend that the referral to the Phoenix surgeon was not in the normal progression of authorized treatment. We disagree.
        Treatment that is rendered as a result of a referral in the "normal progression of authorized treatment" is compensable. Greager v. Industrial Commission, 701 P.2d 168 (Colo.App.1985). The existence of such a referral is a question of fact. Suetrack USA v. Industrial Claim Appeals Office, supra.
        As the Panel concluded, the mere fact that the claimant requested that the authorized treating physician make a referral does not mean that such referral is outside the scope of the normal progression of treatment. Further, the evidence here shows that the treating physician exercised independent judgment regarding the advisability of a second neurological opinion. Accordingly, we perceive no error.
        Order affirmed.
        CRISWELL and MARQUEZ, JJ., concur.