William E. SULLIVAN, Petitioner,

v.

The INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado, Director, Division of Labor and City Market, Inc., Respondents.

No. 89CA0196.

Colorado Court of Appeals,
Div. V.

March 8, 1990.

Rehearing Denied April 5, 1990.

Certiorari Denied Aug. 20, 1990.

Tegtmeier, Sears & Mika, P.C., Mary G. Allen, Colorado Springs, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Carolyn A. Boyd, Asst. Atty. Gen., Denver, for respondent Indus. Claim Appeals Office and Director, Div. of Labor.

Nelson, Hoskin, Groves & Prinster, David A. Price, Michael J. Russell, Grand Junction, for respondent City Market, Inc.

Opinion by Judge DAVIDSON.

William E. Sullivan (claimant) contests a final order of the Industrial Claim Appeals Office (Panel) which affirmed the order of the Administrative Law Judge (ALJ) terminating the claimant's workmen's compensation benefits. We affirm.

The claimant's self-insured employer, City Market, Inc. (employer), filed a petition to terminate benefits based on the claimant's settlement of a third-party claim without the employer's consent pursuant to § 8–52–108(2), C.R.S. (1986 Repl.Vol. 3B). Section 8–52–108(2), in pertinent part, provides:

"A compromise of any [cause of action] by the [employee] at an amount less than the compensation provided for by [statute] shall be made only with the written approval of [the person, association, corporation, or insurance carrier liable to pay the same]."

■ Following a hearing, the ALJ found that the claimant had not sought or obtained the employer's written consent to the settlement. The ALJ further found that insofar as the equitable defenses of waiver, estoppel, and laches may be available to bar termination of the benefits pursuant to the forfeiture rule established in *In re Death of Peterkin*, 729 P.2d 977 (Colo.1986), they were not applicable in this case. The Panel affirmed the ALJ's order.

The claimant contends that the *Peterkin* forfeiture rule should not apply here. Claimant argues that, unlike the claimant in *Peterkin*, he promptly notified the employer of his intent to pursue the third-party claim. He further argues that the employer, although aware of the suit, failed to advise him regarding its position on the suit and failed to assert timely its right to accept or reject the settlement. We disagree.

Our supreme court in *Peterkin* interpreted § 8–52–108(2) to require termination of benefits in instances in which an employee has failed to obtain an insurer's written approval to the settlement of a third-party claim for less than the amount necessary to discharge the insurer's liability under the Act. Claimant's argument is based on a footnote in *Peterkin*, in which the supreme court, with citation to foreign authority, notes that: "[S]ome courts avoid the harsh rule of forfeiture if the insurer participated in or encouraged the employee's settlement."

The phraseology of the footnote, first of all, makes it uncertain as to whether such rule has been adopted in Colorado. However, assuming that such a bar exists, we agree with the Panel that the ALJ's factual determination that the claimant has failed to establish equitable grounds justifying relief from forfeiture is supported by substantial evidence in the record.

The claimant's attorney in the third-party action testified that he recommended to the employer's insurance adjuster that the case be settled, and was told by the adjuster, "Do the best you can." The adjuster, however, denied that he ever expressly or impliedly agreed to a specific settlement, or that he waived the employer's right to approve a specific settlement.

Although the evidence was conflicting concerning this and other communications between claimant's attorney and the employer's insurance adjusters and attorneys, the ALJ could reasonably infer that claimant's counsel presented the settlement to the employer as a *fait accompli* in June 1986, and that the only matter left open to further discussion by claimant's counsel was the division of proceeds.

■ The resolution of conflicting evidence is binding on review, *see Gelco Courier v. Industrial Commission*, 702 P.2d 295 (Colo.App.1985), regardless of the ex-

istence of evidence which may have supported a contrary result. *See May D & F v. Industrial Claim Appeals Office*, 752 P.2d 589 (Colo.App.1988).

■ As the Panel noted, the adjuster's subsequent discussion concerning distribution of proceeds with claimant's counsel does not compel the conclusion that the employer consented to the settlement itself, or relinquished its right of approval under § 8–52–108(2). In accordance with the reasoning in *Peterkin, supra,* an insurer's general knowledge of, and consent to, third-party negotiations does not constitute participation in, or encouragement of, a *specific* settlement agreement.

■ Finally, the claimant's argument regarding the doctrines of apparent authority and agency by estoppel is misplaced. We assume, as did the Panel, that the independent insurance adjusters, as agents of the employer, had the authority to bind the employer. However, we agree with the Panel that there is substantial evidence to support the ALJ's determination that the adjusters neither consented to the settlement, nor waived the employer's right to approve the settlement.

The evidence was uncontroverted that claimant's counsel did not seek nor obtain written approval of the settlement, and that neither the employer nor its agents ever told claimant's counsel that written consent was unnecessary. Since there is substantial evidence to support the dispositive findings of fact, and the findings support the conclusion to terminate claimant's benefits pursuant to § 8–52–108(2), we are bound by the Panel's order on review.

The order is affirmed.

NEY, J., concurs.

RULAND, J., dissents.

Judge RULAND dissenting.

I respectfully dissent because I view City Market's conduct prior to settlement of the third-party claim as precluding it from relying upon the statutory requirement for prior written approval.

As noted by the majority, our supreme court in *In re Death of Peterkin,* 729 P.2d 977 (Colo.1986) (fn.2), stated that: "Some courts avoid the harsh rule of forfeiture if the insurer participated in or encouraged the employee's settlement." In my view, this rule should be adopted for this jurisdiction. And, I conclude that the undisputed facts in this case establish conduct of an employer which should bar imposition of the forfeiture rule.

In March of 1984, the attorney for claimant on the third-party claim specifically advised the adjuster that a third-party claim would be asserted and requested "advice as to how City Market wished to participate in any litigation we may undertake." This correspondence was followed by a formal "notice of third-party action" in June.

In the transmittal letter accompanying the notice, counsel for the claimant stated:

"Please advise if you desire to enter into any fee arrangement with regard to recovery of your expenses ... If I do not hear from you, I will assume that you will wish to proceed with separate representation in this regard. At this time, however, I am requesting that you agree to participate in the expenses which will necessarily be incurred in bringing this third party litigation. Please contact me so we may arrive at some acceptable agreement...."

City Market's response was limited to proposals relative to release of claimant's claim for compensation benefits in exchange for assignment of City Market's subrogation rights and other consideration.

The claimant's attorney then contacted the adjuster by telephone at various intervals during his investigation of the claim, and specifically, with reference to the difficulty in establishing liability on the part of the third-party. The investigation included employment and the attendant expense of an expert to evaluate the safety of the site where claimant was injured.

As a result of these contacts, in January of 1985, the adjuster prepared a memorandum for the file indicating that no return should be expected on the third-party claim by reason of the investigation and "a set-

tlement might be the best way to go on this claim, otherwise could drag on."

Approximately fifteen months later, in April of 1986, the attorney for claimant again contacted the adjuster, again explained the difficulty with the liability aspects of the case, and, as noted by the majority, claimant's attorney was advised to "do the best that you can."

Then, on May 29, claimant's attorney called the adjuster and specifically informed him of a proposed settlement of $12,500. Counsel sought to discuss distribution of the settlement proceeds. However, because the adjuster stated he had no authority, claimant's attorney was referred by the adjuster to the attorney then representing City Market in the compensation proceeding. This attorney failed to return a telephone call from claimant's attorney until after he received a letter from claimant's attorney on June 13 advising of the settlement. Even then, no objection was made to the settlement amount.

The draft representing all settlement proceeds was ultimately sent to City Market and was returned, in September of 1987, after present counsel for City Market was engaged and advised claimant of its position that the right to compensation benefits had been forfeited.

In sum, as the majority notes, no representative of City Market expressly waived the statutory requirement of written approval for the settlement. However, City Market was invited to participate in assertion of the third-party claim, City Market was given the opportunity to involve its own attorney in assertion of the claim; City Market was kept fully advised of the status of the claim (including, especially, the difficulty in establishing liability for claimant's injury); and City Market was made aware of the proposed settlement before any agreement was entered into. Yet at no time over a period in excess of two years did any representative of City Market object or express concern relative to counsel's pursuit of the claim, the investigation of the claim, the fact that settlement of the claim was appropriate, or that it wished additional time to evaluate the proposed settlement. Indeed, there is nothing in the record before us which suggests that the settlement amount was other than appropriate under the circumstances.

"Parties who remain silent when they ought, in the exercise of good faith, to speak, will not be heard to speak when in the exercise of the same good faith they ought to remain silent." *Johnson v. Neel*, 123 Colo. 377, 229 P.2d 939 (1951); *Fanning v. Denver Urban Renewal Authority*, 709 P.2d 22 (Colo.App.1985).

In my view, the conduct of City Market in this case should be characterized as estoppel by acquiescence. Conversely, the statutory purpose in requiring written approval—to avoid an injudicious settlement to the detriment of the employer—has here been served. Thus, I would not permit City Market to invoke the technical defect of an absence of written approval as a basis for causing the injured employee to forfeit significant benefits.

I would set aside the order of the Panel and remand the case with directions to reinstate claimant's benefits.